UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X          05 Civ. 2272 (GBD)
JHONY SANTIAGO CABRERA, Individually
and on behalf of others similarly situated,

                            Plaintiffs,

          -against-

211 GARAGE CORP., 301 PARK CORP.,
221 THOMPSON STREET PARK CORP.,
PARK IT MANAGEMENT CORP.,
UNKNOWN CORPORATIONS "A-Z"
FRED "FREDDY" WHITE, and
ROY BERNARD,
                            Defendants.
------------------------------------------------------X


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
Francisco Rodas, Individually
and on behalf of others similarly situated,                      07 Civ. 7313 (GBD)

                            Plaintiff,

          -against-

PARK IT MANAGEMENT CORP.,
 211 GARAGE CORP., 301 PARK CORP.,
221 THOMPSON STREET PARK CORP.,
UNKNOWN CORPORATIONS "A-Z"
FRED "FREDDY" SPINDLER aka
FRED "FREDDY" WHITE, ROY SHOMBER
aka ROY BERNARD, and MITCHELL GERBER,

                            Defendants.
------------------------------------------------------X


## PLAINTIFFS' MEMO IN SUPPORT OF CLASS CERTIFICATION AND TO
## CIRCULATE A NOTICE OF PENDENCY

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.  PROCEDURAL FACTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.  SUBSTANTIVE FACTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    C.  DUTIES OF GARAGE ATTENDANTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    D.  NUMEROSITY  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III. ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A. THE CIRCULATION OF A NOTICE OF PENDENCY SHOULD BE ORDERED  . 4

        Scope of Notification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    B.  PLAINTIFF'S PROPOSED FORM OF NOTICE IS APPROPRIATE . . . . . . . . . . . 7

    C.  A CLASS ACTION IS APPROPRIATE AND SATISFIES ALL RULE 23
       REQUIREMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        1.    Plaintiff Satisfies The Numerosity, Commonality, Typicality and
            Adequacy Requirements Of Rule 23(a).  . . . . . . . . . . . . . . . . . . . . . . . . 8

            a. The Class is Sufficiently Numerous and Joinder is Impracticable . . . . 9

            b.  There Are Common Questions of Law and Fact  . . . . . . . . . . . . . . . 10

            c. The Representative Plaintiff's Claims are Typical of Those of the Class 13

            d.  Plaintiff Is an Adequate Representative of the Class  . . . . . . . . . . . . 15

        2. The Class Satisfies the Requirements of Rule 23(b)(3) . . . . . . . . . . . . . . . . 16

IV.       CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

i

# TABLE OF AUTHORITIES

Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)  . . . . . 8

Marisol A. ex rel. Forbes v. Gilliani, 126 F.3d 372 (2d Cir. 1997)  . . . . . . . . . . . . . . . 10, 13-16

Wagner v. NutraSweet Co., 95 F.3d 527 7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Adames v. Mitsubishi Bank, Ltd., 133 F.R.D. 82 (E.D.N.Y. 1989)  . . . . . . . . . . . . . . 9, 10, 13, 16

Boucher v. Syracuse Univ., 1.64 F.3d 113 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

Braunstein, 600 F.2d at 336 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Caridad v. Metro-North Commuter R.R., 191 F.3d 283 (2d Cir. 1999)  . . . . . . . . . . . . . . . . . . . 8

Church v. Consolidated Freightways, Inc., 137 F.R.D. 294 (N.D. Cal. 1991)  . . . . . . . . . . . . . . 6

Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473 (2nd Cir. 1995)  . . . . . . . . . . . . . . . . . . 9

Cook v. United States, 109 F.R.D. 81 (E.D.N.Y.1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Duprey v. Connecticut Dept of Motor Vehicles, 191 F.R.D. 329 D. Conn. 2000)  . . . . . . . . . . 14

Foltz v. U.S. News & World Report, 106 F.R.D. 338 D.D.C. 1984)  . . . . . . . . . . . . . . . . . . . . 13

Foster v. The Food Emporium, 2000 U.S. Dist. LEXIS 6053(S.D.N.Y. 2000) . . . . . . . . . . . . 4, 5

Frank v. Capital Cities Communications, Inc., 88 F.R.D. 674 (S.D.N.Y.1981)  . . . . . . . . . . . . . 5

Guo Xing Cao v. Chandara Corp., 2001 U.S. Dist. LEXIS 8631 *14 (S.D.N.Y. June 27, 2001)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Harrington v. Education Management Corp., 2002 U.S. Dist. LEXIS 10966 (SDNY 2002) . . . . 7

Heagney v. European American Bank, 122 F.R.D. 125, 127 (E.D.N.Y.1988) . . . . . . . . . . . . . 5-7

Hirschfeld v. Stone, 193 F.R.D. 175 (S.D.N.Y. 2000)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-10

Hoffman v.Sbarro, Inc., 982 F.Supp 249 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

In re Agent Orange Prod. Liab. Litig., 818 F.2d 145 (2d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . 10

In re AM Int'l, Inc. Sec. Litig., 108 F.R.D. 190 (S.D.N.Y. 1985) . . . . . . . . . . . . . . . . . . . . . . . . 12

In re Drexel Burnham Lambert, 960 F.2d 285, 290 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . 14, 16

In re Frontier Ins. Group, Inc. Securities Litigation, 172 F.R.D. 31 (E.D.N.Y. 1997) . . . . . . . 17

In re Initial Public Offering Sec. Litigation, 2006 U.S. APP. LEXIS 29859 (2d Cir. Dec. 5, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

In re TCW/DW North American Government Income Trust Securities Litigation, 941 F. Supp: 326 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

In re WorldCom, Inc. Secs. Litig., 219 F.R.D. 267,  2003 U.S. Dist. LEXIS 24641, *20  (U.S. Dist. , 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 14, 17

Jackson v. New York Telephone Co., 163 F.R.D. 429, 431 (S.D.N.Y.1995) . . . . . . . . . . . . . . . 5

Jackson v. New York Telephone Co., 163 F.R.D. 429, 431 (S.D.N.Y.1995) . . . . . . . . . . . . . . . 5

Jenson v. Eveleth Taconite Co., 139 F.R.D. 657 (D. Minn. 1991) . . . . . . . . . . . . . . . . . . . . 9, 12

Jacobsen v The Stop & Shop Supermarket Company, 2003 . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Krueger v. New York Telephone Co., 1993 WL 276058 (S.D.N.Y. July 21, 1993) . . . . . . 5, 6, 16

Kumar Realite v. Ark Restaurants Corp., 7 F.Supp. 2d. 303, 306 (S.D.N.Y. 1998) . . . . . . . . 4, 6

Lixin Zhao, v. Benihana, Inc., 2001 U.S. Dist. LEXIS 10678, *8-12 (SDNY May 7, 2001) . . . . 5

Lo Re v. Chase Manhattan Corp., 431 F. Supp. 189 (S.D.N.Y. 1977) . . . . . . . . . . . . . . . . . . . 15

Madrid v.Minolta Bus. Solutions, Inc., 2002 U.S. Dist. LEXIS 18539 (SDNY 2002) . . . . . . . . **4**

Marisol A. ex rel. Forbes v. Giuliani, 929 F. Supp. 662 (S.D.N.Y. 1996) . . . . . . . . . . . 10, 13-16

Martens v. Smith Barney, 181 F.R.D. 243 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

iii

Medicare Beneficiaries' Defense Fund v. Empire Blue Cross Blue Shield, 938 F. Supp. 1131
(E.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

Meyer v. MacMillan, 95 F.R.D. 411 S.D.N.Y. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Nathan Gordon Trust v. Northgate Exploration, Ltd., 145 F.R.D. 105 (S.D.N.Y. 1993) . . . . . . 12

Palmer v. Reader's Digest Ass'n, 42 Fair Empl. Prac. Cas. (BNA) 212, 1986 WL 11458
(S.D.N.Y.1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Robidoux v. Celani, 987 F.2d 931 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13

Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147 2d Cir. 2001) . . . . . . . . . . . . . . 13

Rossini v. Ogilvy & Mather, Inc., 798 F.2d 590 (2d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . 17

Shelter Realty Corp. v. Allied Maintenance Corp., 574 F.2d 656 (2d Cir. 1978) . . . . . . . . . . . . 8

Sirota v. Solitron Devices, Inc., 673 F.2d 566 (2d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Tennie v. City of New York Dep't of Soc. Servs., 1987 WL 6156, at *3-4 (S.D.N.Y. Jan. 30,
1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 14

Trautz v. Weisman, 846 F. Supp. 1160, 1167 (S.D.N.Y. 1994) . . . . . . . . . . . . . . . . . . . . . . . . 14

Trief v. Dun & Bradstreet Corp., 144 F.R.D. 193 (S.D.N.Y. 1992) . . . . . . . . . . . . . . . . . . . . . 10

Weigmann v. Glorious Food, Inc., 169 F.R.D. 280 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . 10

Worldcom, at *54 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## STATUES

219 F.R.D. 267; 2003 U.S. Dist. LEXIS 24641 *25 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

29 U.S.C. § 216(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

29 U.S.C. §207 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. §1981 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

7A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1778 (1998) . . . . 18

Executive Law §290 et.seq . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fair Labor Standards Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 3, 4, 5, 6, 7

Fed. R. Civ. P. 23(a)(l)-(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 6-10, 13-16, 18

Fed. R. Civ. P. 23(b)(l)-(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 16-18

Fed. R. Civ. P. 23(c)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Moore's Fed. Prac. § 23.22[3][a] (Matthew Bender 3d, ed. 1997) . . . . . . . . . . . . . . . . . . . . . 9

New York Labor Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 17, 18

New York State Human Rights Law, Executive Law §290 . . . . . . . . . . . . . . . . . . . . . . . . . . 1

# I. **PRELIMINARY STATEMENT**

Jhony Santiago Cabrera and Francisco Rodas have brought claims in two separate but almost identical suits against Park It Management Corp., 211 Garage Corp., 301 Park Corp., 221 Thompson Street Park Corp., Unknown Corporations "A-Z", and individual owners and managers of the named corporations[1] (sometimes collectively referred to as Park It or defendants), for wage violations, including denial of overtime premium compensation for all hours worked in excess of forty per workweek, spread-of-hours compensation of an extra hour's pay in each day worked over ten, and for making improper deductions from their pay, in violation of the Fair Labor Standards Act §§7, 29 U.S.C. §207, and the New York Labor Law §§190, *et seq*. and §650, *et seq*.[2] (Shen Decl. 3)

Plaintiffs respectfully submit this Memorandum of Law in support of their motion to circulate a Notice of Pendency and Consent to Join to garage attendants pursuant to 29 U.S.C. § 216(b), and for class certification pursuant to Fed. R. Civ. P 23(a) and (b)(3).

Plaintiffs' request to circulate a Notice of Pendency and Consent to Join to garage attendants should be granted since the plaintiffs are similarly situated to the other attendants who worked at defendant garages, who were denied full premium pay for work which they performed over 40 hours per week. Plaintiffs more than meet the minimal standards required for circulation of a notice and consent to FLSA putative class members.

The class which plaintiffs seek to certify consists of all persons employed by defendants as garage attendants who, at any time since February 19, 1999 (the "class period"), were denied overtime pay, in violation of the New York Labor Law §§ 190 et. seq. and 650 et seq. Brought on behalf of more than 340 exploited workers under a common scheme, this is exactly the sort of case for which the class action device was created.

---

[1] Cabrera v. 212 Garage Corp., 05 Civ. 02272 and Rodas v. Park It Management Corp., 07 Civ. 7313.

[2] Plaintiffs do not seek class treatment for other claims they have brought: race, national origin or ethnicity discrimination and citizenship discrimination, pursuant to 42 U.S.C. §1981, the New York State Human Rights Law, Executive Law §290 et.seq. and the New York Rights Law, §8-107 et.seq. of the Administrative Code.

1

## II.  **STATEMENT OF FACTS**

### A.  PROCEDURAL FACTS

Cabrera v. 212 Garage Corp., 05 Civ. 02272 was commenced by plaintiff Jhony Santiago Cabrera on February 18, 2005; Rodas v. Park It Management Corp., 07 Civ. 7313 was commenced by plaintiff Francisco Rodas on August 15, 2007.  (Shen Decl. 4-5) Both plaintiffs have filed Consents with the Court to be FLSA plaintiffs. (Shen Decl. 6, Exh. A, Consents) In Cabrera v. 211 Garage Corp., discovery on issues pertaining only to class certification was scheduled to conclude by October 13, 2006; discovery has not yet commenced in Rodas v. Park It Management Corp. (Shen Decl. 7). The cases were consolidated per order dated November 5, 2007. (Shen Decl.8)

### B.  SUBSTANTIVE FACTS

Plaintiff Cabrera worked as a garage attendant from about April 3, 1995 through February 28, 2002. (Exh. B, Cabrera Decl. 2) Plaintiff Rodas worked as a garage attendant from August 1996 through June 29, 2007. (Exh. B, Rodas Decl. 2) Defendants own and operate parking garages throughout Manhattan. The number of garages owned and operated by defendants is between 40 and 60. Each garage was staffed by between 4 to 6 attendants and, at any one time, 80 to 120 garage attendants worked for all defendants garages. (Exh. B Cabrera Decl. 3-4; Rodas Decl. 3-4) Plaintiffs and similarly situated defendants' attendants were highly qualified, and their performances were more than satisfactory at all relevant times. (Exh. B, Cabrera Decl.6; Rodas Decl. 6)

Garage attendants who worked for defendants, including plaintiffs, normally worked more than 40 hours per week, but were not paid at the legally required overtime rate for most of their overtime work. They were often simply denied any pay for hours they worked greater than 40 in a week, or  were paid at the straight time rate for a portion of the overtime hours worked. Sometimes they were paid at the proper overtime rate paid for some of the overtime hours worked. Much of compensation for work over 40 hours per week was paid in cash off the books. (Exh. B, Cabrera Decl. 7-12; Rodas Decl. 7-12) Defendants did not keep time records for its attendants, nor maintain written policies about overtime pay. (Shen Decl. 9, Exh. C, Plaintiffs' Request for Documents and

Def. Responses to Plaintiffs' Request for Documents, Request #'s 35, 40-50)

Plaintiffs and other attendants normally worked more than 10 hours per day, but, in violation of state wage law, defendants failed to pay spread-of-hours compensation of an extra hour's pay in each day worked over ten hours. (Exh. B, Cabrera Decl. 22; Rodas Decl. 22.)

Throughout their employment, Plaintiffs were also forced to pay for the repair of alleged damage done to vehicles in Defendants' various parking lots and garages during their work and while in the scope of their employment. In order to pay for such repairs, Defendants would force Plaintiffs, and other employees of Defendants, to make cash payments, which was deducted from their wages. (Exh. B, Cabrera Decl. 17-18; Rodas Decl. 17-18) Throughout their employment, Defendants also forced attendants to pay for rental car service required for client's whose cars had suffered accident in the garage. Defendants illegally withheld these payments, despite the fact that, upon information and belief, the cost of repairing such damage to vehicles was covered by Defendants' insurance. (Exh. B, Cabrera Decl. 19; Rodas Decl. 19)

The defendants were, at all relevant times herein, aware that the garage attendants, including plaintiffs, were not being paid their full and proper wages in accordance with the provisions of the Fair Labor Standards Act and the New York State Labor Law. In fact, it was the explicit policy of defendants not to pay for overtime or spread-of-hour wages at the legally required rate, and to make improper deductions. (Exh.B, Cabrera Decl.23; Rodas Decl. 23)

## C. DUTIES OF GARAGE ATTENDANTS

The garage attendants employed by defendants are non-management employees whose duty is to park and retrieve cars for customers. (Exh.B, Cabrera Decl.5, Rodas Decl. 5)

## D. NUMEROSITY

From 2003 through 2005, the 3 year period for which defendants provided wage documentation, there were approximately 184  garage attendants who worked for Defendants garages, and at any particular time, there were approximately 80-120 garage attendants working in Defendants garages at any one time. (Shen Decl. 10; Exh. B, Cabrera Decl.4; Rodas Decl. 4).  Thus,

3

extrapolating from the 2003-2005 period for which defendants provided data, during the 8.75 year class period, from February 19, 1999 to present, over 340 attendants have worked for defendants (Shen Decl.10, Exh. D, Shukla Decl.8)

## III.  ARGUMENT

### A. THE CIRCULATION OF A NOTICE OF PENDENCY SHOULD BE ORDERED

Plaintiffs have brought a collective action for overtime pay, pursuant to the Fair Labor Standards Act §7, and seeks authorization for circulation of a class notice to putative class members. Putative class members in a collective action brought under the FLSA must opt-in in writing under § 16(b), unlike Rule 23 class actions, where potential class members must opt-out after a class is certified if they do not want to be bound.

Whether circulation of a class notice under the FLSA should be authorized by the court involves the consideration of but a single issue: whether the other members of the proposed collective action are 'similarly situated.' Jacobsen v The Stop & Shop Supermarket Company, 2003 U.S. Dist. LEXIS 7988 (SDNY 2003); Madrid v.Minolta Bus. Solutions, Inc., 2002 U.S. Dist. LEXIS 18539 (SDNY 2002); Kumar Realite v. Ark Restaurants Corp.,7 F.Supp. 2d. 303, 306 (S.D.N.Y. 1998); Foster v. The Food Emporium, 2000 U.S. Dist. LEXIS 6053(S.D.N.Y. 2000)(citing Hoffman v. Sbarro, Inc., 982 F.Supp 249 (S.D.N.Y. 1997)).  The issues considered on a Rule 23 motion for class certification, such as numerosity, typicality, commonality and representativeness, are not considered on a motion for circulation of a class notice under the FLSA. Foster, at *3.

While neither the FLSA nor its implementing regulations define the term "similarly situated," courts have uniformly found that the burden that plaintiffs must meet to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law is modest, Jacobsen v The Stop & Shop Supermarket Company, 2003 U.S. Dist. LEXIS 7988 (SDNY 2003), not stringent, Kumar Realite, at 306. Cases collected in Kumar Realite, at 306, similarly characterize plaintiff's burden at the preliminary notice stage: "plaintiffs are only required to demonstrate a factual nexus that supports a finding that potential plaintiffs were subjected to a common discriminatory

4

scheme," Jackson v. New York Telephone Co., 163 F.R.D. 429, 431 (S.D.N.Y.1995); when the litigation is in its early stages, plaintiffs need only provide "some factual basis from which the court can determine if similarly situated plaintiffs exist") Krueger v. New York Telephone Co., 1993 WL 276058 (S.D.N.Y. July 21, 1993); "plaintiffs need only describe the potential class within reasonable limits and provide some factual basis from which the court can determine if similarly situated potential plaintiffs exist," Schwed v. General Electric Co., 159 F.R.D. 373, 375-76 (N.D.N.Y.1995); requiring "some identifiable factual nexus which binds the named plaintiffs and potential class members together as victims of a particular alleged discrimination", Heagney v. European American Bank, 122 F.R.D. 125, 127 (E.D.N.Y.1988) (quoting Palmer v. Reader's Digest Ass'n, 42 Fair Empl. Prac. Cas. (BNA) 212, 1986 WL 11458 (S.D.N.Y.1986)).

Notice to putative class members should be given as soon as possible, since, because of the statute of limitations, "potential plaintiffs may be eliminated as each day goes by." Foster, at *5. The "Court [need not] wait for defendant to complete its discovery before authorizing class notice. To the contrary, [so long as the "similarly situated" requirement has been met], courts have endorsed the sending of notice early in the proceeding, as a means of facilitating the FLSA's broad remedial purpose and promoting efficient case management. See, Braunstein v. Eastern Photographic Laboratories, Inc., 600 F.2d 335, 336 (2d Cir. 1978) (notice to potential plaintiffs "comports with the broad remedial purpose of the Act, which should be given a liberal construction, as well as with the interest of the courts in avoiding multiplicity of suits"); Lixin Zhao, v. Benihana, Inc., 2001 U.S. Dist. LEXIS 10678, *8-12 (SDNY May 7, 2001), citing Frank v. Capital Cities Communications, Inc., 88 F.R.D. 674, 676 (S.D.N.Y.1981) ("the experiences of other employees may well be probative of the existence vel non of a discriminatory practice, thereby affecting the merits of the plaintiffs' own claims"); Schwed, 159 F.R.D. at 375 ("[E]ven where later discovery proves the putative class members to be dissimilarly situated, notice ... prior to full discovery is appropriate as it may further the remedial purpose of the [FLSA]."), Cook v. United States, 109 F.R.D. 81, 83 (E.D.N.Y.1985) ("Certainly, it is 'unlikely that Congress, having created a procedure for representative action, would have wanted to prevent the class

representative from notifying other members of the class that they had a champion.' ") (citation omitted); Krueger, 1993 WL 276058 at *2 ("[E]ven if plaintiffs' claims turn out to be meritless or, in fact, all the plaintiffs turn out not to be similarly situated, notification at this stage, rather than after further discovery, may enable more efficient resolution of the underlying issues in this case.")." Kumar Realite, at 306.

The group of persons whom plaintiffs seek to notify about this collective action are or were garage attendants who worked for defendants and are "similarly situated" for FLSA purposes. Defendants, at garages managed by defendant Mangal, had a policy of denying garage attendants full and proper overtime pay. When garage attendants worked more than40 hours per week, Defendants did not pay at the FLSA mandated time-and-a-half rate required for overtime work. Guo Xing Cao v. Chandara Corp., 2001 U.S. Dist. LEXIS 8631 *14 (S.D.N.Y. June 27, 2001).

Putative class members need not be identically situated to potential class members. Heagney v. European American Bank, 122 F.R.D. 125, 127 (E.D.N.Y. 1988). In Church v. Consolidated Freightways, Inc., 137 F.R.D. 294 (N.D. Cal. 1991), the court held that a single decision, policy or plan was sufficient for all employees to constitute a class under § 16(b) of the FLSA. Church, 137 F.R.D. at 306. The court noted that the strict class requirements of Rule 23 were not necessary in a § 16(b) action. Id. The court decided:

> [A] class claim is not defeated simply because the proposed class performed a variety of different jobs at different locations, reported to different supervisors or left employment for different reasons than the named plaintiffs. What governs the scope of the class is whether the named plaintiffs and their class members were all affected by a similar plan infected by discrimination. The plaintiffs need not be identically situated to potential class members.

Id. at 308. The court further found that the similarity between the class representative and other putative members is not affected by a difference in the weekly rate of pay, work location or number of uncompensated hours. Church, 137 F.R.D. at 308.

In this case, plaintiffs allege that all garage attendants for defendants were adversely affected by

6

the same decision, policy or plan of defendants to deny them their minimum wages and overtime premium, and to make improper deductions from their pay.

Since the statute of limitations on the FLSA claims of putative members continues to run each day until they file with the Court a written consent to join plaintiffs' FLSA action, there is no reason to delay the circulation of a Notice of Pendency to such similarly situated persons. Such a delay will only serve to defeat such similarly situated persons' rights under the FLSA.

<u>Scope of Notification</u>

Plaintiffs propose that notification be given to every person who has been employed by Defendants as a garage attendants since February 19, 2002, which is within three years from the commencement of this lawsuit. While the statute of limitations for bringing claims under the FLSA is two years, and for willful violations under the FLSA, three years, plaintiffs claim that the violations are willful, and even without a determination of an intentional violation, notice extending to companions employed three years prior is appropriate. <u>Harrington v. Education Management Corp.</u>, 2002 U.S. Dist. LEXIS 10966 (SDNY 2002)

**B. PLAINTIFFS' PROPOSED FORM OF NOTICE IS APPROPRIATE**

Once a Court has determined that notification is proper in an FLSA action the question remains as to what form such notice should take. Truthful and proper direct mail advertising by attorneys is constitutionally protected, and at least one reported decision has held that once FLSA notice has been found proper, plaintiffs' counsel is then free to contact defendants' employees by letter without Court supervision. <u>See</u>, <u>Heagney v. European American Bank</u>, 122 F.R.D. 125, 130-131 (E.D.N.Y. 1988, J. Dearie)(Finding that similarly situated persons should be allowed to join ADEA case as plaintiffs and granting plaintiffs' counsel leave to circulate notice of the litigation but declining to Order any particular form of notice). Plaintiffs' proposed Notice of Pendency and Consent to Join (Exh. E) is appropriate.

**C. A CLASS ACTION IS APPROPRIATE AND
SATISFIES ALL RULE 23 REQUIREMENTS**

"As the Supreme Court has stated., '[n]othing in either the language or history of Rule 23 ... gives

a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class 'action.' ... In deciding a certification motion, district courts must not consider or resolve the merits of the claims of the purported class." Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 291, 293 (2d Cir. 1999) (quoting Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)). Because this is not the time for merits analyses, "[w]hen considering a motion for class certification, courts should consider the allegations in the complaint as true." Hirschfeld v. Stone, 193 F.R.D. 175, 182 (S.D.N.Y. 2000) (citing Shelter Realty Corp. v. Allied Maintenance Corp., 574 F.2d 656, 661 n. 15 (2d Cir. 1978)). Nor at this time does the Court even determine whether the claims are adequately pleaded. In re WorldCom, Inc. Secs. Litig.,219 F.R.D. 267, 2003 U.S. Dist. LEXIS 24641, *20 (U.S. Dist. , 2003).

"However, a court may consider material outside the pleadings in determining the appropriateness of class certification." Hirschfeld, 193 F.R.D. at 182 (citing Sirota v. Solitron Devices, Inc., 673 F.2d 566, 571 (2d Cir. 1982) ("in making a certification decision, a judge must look somewhere `between the pleading and the fruits of discovery'") (citation omitted)).

A class seeking certification must meet the four prerequisites of Fed. R. Civ. P. 23(a)(l)-(4), and then must establish that they constitute a proper class of at least one of the three types delineated on Fed. R. Civ. P. 23(b)(l)-(3), and factual determinations must be made with respect to those requirements. In re Initial Public Offering Sec. Litigation, 2006 U.S. APP. LEXIS 29859 (2d Cir. Dec. 5, 2006). Plaintiffs' Complaint and the evidence submitted in support of this motion are sufficient to satisfy the requirements of Rule 23(a). See infra Point I. They also establish that the class that plaintiffs seek to represent qualifies under Rule 23(b)(3). See infra Point II.

      1.   Plaintiffs Satisfy The Numerosity, Commonality, Typicality and Adequacy Requirements Of Rule 23(a).

A class seeking certification must meet the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. The class plaintiffs seek to represent meets all four criteria.

a. The Class is Sufficiently Numerous and Joinder is Impracticable

Rule 23(a)(1) requires that the class must be "so numerous that joinder of all members is impracticable." "While there are no rigid numerical guidelines for determining impracticability of joinder, courts have observed that generally less than 21 is inadequate; more than 40 is adequate; and numbers in between 21 and 40 are given varying treatment" 5 James Wm. Moore et al., Moore's Fed. Prac. § 23.22[3][a], at pp. 23-63 (Matthew Bender 3d, ed. 1997). More concretely, in the Second Circuit, "numerosity is presumed at a level of 40 members." Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2nd Cir. 1995).

During the more than 8 year period since February 19, 1999 ("class period"), over 340 garage attendants have worked for defendants. These numbers are more than sufficient to establish numerosity. See Hirschfeld v. Stone, 193 F.R.D. 175, 182 (S.D.N.Y. 2000) (finding numerosity where plaintiffs estimated 150 to 170 class members); Jenson v. Eveleth Taconite Co., 139 F.R.D. 657, 664 (D. Minn. 1991) (finding numerosity in Title VII sexual harassment class action where 65 women had been employed, and at least 23 women had applied for employment, during the class period); Adames v. Mitsubishi Bank, Ltd., 133 F.R.D. 82, 89 (E.D.N.Y. 1989) ("One hundred forty two members are clearly sufficient to satisfy the numerosity requirement").

Beyond the raw number of class members, the numerosity inquiry looks to whether "joinder of all members is impracticable." The Second Circuit has explained that "impracticable does not mean impossible" and that

> [d]etermination of practicability depends on all the circumstances surrounding a case, not on mere numbers.... Relevant considerations include judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersions of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members. Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993) (citations omitted).

9

Here, the presumption of numerosity stands because joinder of all members of the class is all but impossible for several reasons. First, class certification is appropriate in this case because the class includes former employees of defendants "whose whereabouts may be difficult to ascertain." Tennie v. City of New York Dep't of Soc. Servs., 1987 WL 6156, at *3-4 (S.D.N.Y. Jan. 30, 1987); see also Hirschfeld v. Stone, 193 F.R.D. 175, 182 (S.D.N.Y. 2000) (fluid nature of the class further supports finding of impracticability). Many of the class members "are also economically disadvantaged, making individual suits difficult to pursue." Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993). The class includes garage attendants who currently work at Defendants, and courts have noted in such circumstances that "the concern for possible employer reprisal action exists and renders the alternative of individual joinder less than practicable." Adames v. Mitsubishi Bank, Ltd., 133 F.R.D. 82, 89 (E.D.N.Y. 1989). Because the number of class members is sufficient and the circumstances do not leave joinder a practical alternative, the class meets the Rule 23 (a)(1) standard for numerosity.

### b. There Are Common Questions of Law and Fact

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." "Commonality does not mandate that all class members make identical claims and arguments, only that common issues of fact or law affect all class members. Generally, courts have liberally construed the commonality requirement to mandate a minimum of one issue common to all class members." Trief v. Dun & Bradstreet Corp., 144 F.R.D. 193, 198 (S.D.N.Y. 1992) (citations omitted); see also Marisol A. ex rel. Forbes v. Gilliani, 126 F.3d 372, 376 (2d Cir. 1997) ("The commonality requirement is met if plaintiffs' grievances share a *common question* of law or of fact" (emphasis added)) (citing In re Agent Orange Prod. Liab. Litig., 818 F.2d 145, 166-67 (2d Cir. 1987)); Weigmann v. Glorious Food, Inc., 169 F.R.D. 280, 285 (S.D.N.Y. 1996) ("'a single common question may be sufficient to satisfy this rule'" (quoting Marisol A. ex rel. Forbes v. Giuliani, 929 F. Supp. 662, 690 (S.D.N.Y. 1996), aff d, 126 F.3d 372 (2d Cir. 1997)).

Throughout the class period, Defendants retained the services of over 320  garage attendants in

10

essentially fungible positions, did not fully and properly compensate them, and had a policy and practice of denying overtime pay. The questions of law and fact common to all class members include, among others:

1. What were the terms of employment regarding compensation, including overtime pay, for the class members;

2. Whether Defendants failed and/or refused to pay to class members the correct pay for hours worked in excess of forty per work week within the meaning of the New York Labor Law.

3. Whether records were properly kept.

4. What proof of the hours is sufficient where records are not maintained.

5. Whether Defendants required class members to work more than 10 hours per day and refused to pay to them the statutory premium for such work.

6. Whether Defendants took deductions from class members' pay checks, without their permission, for alleged damage to cars.

In addition to, and overlapping with, the common questions above, the proof of the elements of each cause of action are common to the class. See, infra, 16-18. Any differences amongst the garage attendants do not defeat commonality for three reasons. First, the facts of the garage attendants' situations are very similar, in that they were subject to essentially the same terms and conditions of employment, other than differences in compensation, they provided and performed basically the same garage attendants services, were subjected to a concerted effort to deprive them of overtime pay. Moreover, as discussed above, it is not fatal that only certain facts or issues are common while others are different because a single common question can suffice.

Second, most differences among the workers, such as amount of deductions taken, affect primarily damages, not liability. "The commonality requirement may be met if the common question goes to liability despite individual differences in damages." Jenson v. Eveleth Taconite Co., 139 F.R.D. 657, 664 (D. Minn. 1991). In Medicare Beneficiaries' Defense Fund v. Empire Blue Cross Blue Shield,

938 F. Supp. 1131 (E.D.N.Y. 1996), the Court held that variation in the amounts owed to class members does not preclude class certification: "[i]t is well-established that individual questions with respect to damages will not defeat class certification or render a proposed representative inadequate unless that issue creates a conflict which goes to the heart of the lawsuit." Although the level of damages would be different for each plaintiff, they will not be difficult for Empire to determine.... Therefore, this case is similar to class actions seeking welfare benefits, where courts have ruled class certification is appropriate even though plaintiffs' damage amounts would vary." <u>Medicare Beneficiaries' Defense Fund</u>, 938 F. Supp. at 1147 (quoting <u>In re AM Int'l, Inc. Sec. Litig.</u>, 108 F.R.D. 190, 196 (S.D.N.Y. 1985)); <u>see also, Nathan Gordon Trust v. Northgate Exploration, Ltd.,</u> 145 F.R.D. 105, 108 (S.D.N.Y. 1993) ("Defendants also argue that any class should exclude in-and-out traders.... While there may be a later issue as to damages for these in-and-out traders, they are still proper members of a plaintiff class").

Third, even if differences among workers could defeat commonality, the Court could create subclasses dividing workers into more common groups - e.g., subclasses grouped by garage attendants classification. Rule 23(c)(4) provides that  "When appropriate[,] ... (B) a class may be divided into subclasses and each subclass treated as a class." Where division into subclasses would mitigate a problem preventing class certification, the Court should take advantage of this device rather than deny certification to a class that could have been certified with appropriate subclasses. In <u>Boucher v. Syracuse Univ.,</u> 1.64 F.3d 113 (2d Cir. 1999), a Title IX claim of gender discrimination in collegiate athletic opportunities, the Second Circuit, finding subclass division appropriate, reversed the district court's decision to exclude from the class athletes playing a different sport: "[A]lthough the district court correctly found potential conflicts between members of a class that included both women interested in playing varsity lacrosse and women who wished to play varsity softball, it should have certified two sub-classes - one for each sport - rather than certifying only one class and excluding from that class members of the second." <u>Boucher,</u> 164 F.3d at 119; <u>see also</u> <u>Marisol A. ex rel. Forbes v. Giuliani,</u> 126 F.3d 372, 378 (2d Cir. 1997) (affirming certification of class with two large subclasses and instructing that, after certification but "in advance of trial, the district court must engage in a rigorous analysis of the plaintiffs'

legal claims and factual circumstances in order to ensure that appropriate subclasses are identified");
Medicare Beneficiaries' Defense Fund v. Empire Blue Cross Blue Shield, 938 F. Supp. 1131, 11.42 n.6
(E.D.N.Y. 1996) (granting class certification but stating that "[w]ith respect to the plaintiffs' ERISA
claim, it should be noted that it is likely that subclasses will have to be established, based on exhaustion
or non-exhaustion of administrative remedies by a claimant").

      The still-undeveloped facts of this case, however, do not yet establish any need for subclasses.
The possibility of such a need in the future is not a barrier to certification now, but instead is properly
addressed at whatever later point the need becomes clear. See Foltz v. U.S. News & World Report, 106
F.R.D. 338, 342 (D.D.C. 1984) (certifying class and declining to establish subclasses for plaintiffs who
retired in different years because "the Court will have the opportunity to create subclasses to resolve the
conflicts" that might distinguish retirement years); see generally Adames v. Mitsubishi Bank, Ltd., 133
F.R.D. 82, 88 (E.D.N.Y. 1989) ("It is often proper to view the class action liberally at the early stages
of the litigation since the class can always be modified or divided as issues are later refined for trial").
Accordingly, the class satisfies the commonality requirement of Rule 23(a)(2).

        c. The Representatives Plaintiffs' Claim are Typical of Those of the Class

      Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the
claims or defenses of the class." The Second Circuit has held that, like commonality, typicality need not
be complete for class certification to be proper: "Rule 23(a)(3)'s typicality requirement is satisfied when
each class member's claim arises from the same course of events and each class member makes similar
legal arguments to prove the defendant's liability... When it is alleged that the same unlawful conduct
was directed at or affected both the named plaintiff and the class sought to be represented, the typicality
requirement is usually met irrespective of minor variations in the fact patterns underlying individual
claims." Robidoux v. Celani, 987 F.2d 931, 936-37 (2d Cir 1993) (citations omitted); see also Robinson
v. Metro-North Commuter R.R. Co., 267 F.3d 147, 155 (2d Cir. 2001); Marisol A. ex rel. Forbes v.
Giuliani, 126 F.3d 372, 376 (2d Cir. 1997). "The factual background of [the] named  plaintiff's claim
need not be identical to that of all of the class members as long as "the disputed issue of law or fact

occup[ies] essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." " In re WorldCom, 219 F.R.D. 267; 2003 U.S. Dist. LEXIS 24641 *25. (Citation omitted) The course of conduct alleged by plaintiffs include a pervasive denial by Defendants of wages through a multitude of stratagems which affected all class members.

The named plaintiffs were garage attendants, and were subjected to the same denial of overtime pay and spread-of-hours pay, as well as improper deductions.  The commonality and typicality of garage attendants far exceed any differences with the other garage attendants.

"Typicality under Rule 23(a)(3) should be determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." Wagner v. NutraSweet Co., 95 F.3d 527, 534 (7th Cir. 1996). And as in the commonality inquiry, "a difference in damages arising from a disparity in injuries among the plaintiff class does not preclude typicality." Duprey v. Connecticut Dept of Motor Vehicles, 191 F.R.D. 329, 337 (D. Conn. 2000) (citing Trautz v. Weisman, 846 F. Supp. 1160, 1167 (S.D.N.Y. 1994)).

Typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." In re Drexel Burnham Lambert, 960 F.2d 285, 290 (2d Cir. 1992). Here, all of the class members were  responsible for parking and retrieving cars for Defendants's customers and were subject to a wage policy that ignored payment of overtime pay, including premiums, and spread-of-hours pay, as well as improper deductions.

Even differences in job responsibilities do not necessarily defeat typicality because "Rule 23(a)(3) does not require that named plaintiffs share the precise job title or qualifications of every class member." Tennie v. City of New York Dep't of Soc. Servs., No. 83 Civ. 0884 (MEL), 1987 WL 6156 at *3 (S.D.N.Y. Jan. 30, 1987). In Meyer v. MacMillan, 95 F.R.D. 411, at 414 (S.D.N.Y. 1982), the Court certified a class that included both professional and clerical workers; see also Lo Re v. Chase Manhattan Corp., 431 F. Supp. 189, 196-97 (S.D.N.Y. 1977) (certifying class of employees holding varying "professional, managerial, and official positions").

14

Courts regularly certify classes featuring far more factual and legal variance among class members. In <u>Marisol A. ex rel. Forbes v. Giuliani,</u> 126 F.3d 372 (2d Cir. 1997), after noting that "[the commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)," the Second Circuit certified a class of children injured by widely varying flaws in the child welfare system, from "inadequate' training and supervision of foster parents, the failure to properly investigate reports of suspected neglect and abuse, unconscionable delay in removing children from abusive homes, and the inability to secure appropriate placements for adoption." <u>Id.</u>, at 376. The Circuit affirmed the district court's holding that

> [t]he unique circumstances of each child do not compromise the common question of whether, as plaintiffs allege, defendants have injured all class members by failing to meet their federal and state law obligations. Indeed, as plaintiffs argue, the actions or inactions of defendants are not isolated or discrete instances but, rather, form a pattern of behavior that commonly affects all of the proposed class members.

<u>Id.</u>, at 377. The rationales of <u>Marisol A.</u> apply all the more clearly here. Any differences limiting commonality among the present class members, or limiting typicality of the named plaintiffs' claims, are nowhere near as substantial as the difference in <u>Marisol A.</u> between an unadopted child and an abused child both claiming injury by the same agency. Conversely, as in <u>Marisol A.</u>, the defendants' employment practices, "are not isolated or discrete instances but, rather, form a pattern of behavior that commonly affects all of the proposed class members." <u>Id.</u>;

Because the named plaintiffs' claims are typical of those of the class and those of potential subclasses, the class satisfies the typicality requirement of Rule 23(a).

#### d.  Plaintiffs Are Adequate Representatives of the Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." This is a two-part inquiry. "Rule 23(a)(4) requires that plaintiffs demonstrate that `class counsel is qualified, experienced, and generally able to conduct the litigation.' Plaintiffs must also

demonstrate that there is no conflict of interest between the named plaintiffs and other members of the plaintiff class." Marisol A. ex rel. Forbes v. Giuliani, 126 F.3d 372, 378 (2d Cir. 1997) (citing In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 291 (2d Cir. 1992)).

The conflict of interest inquiry "merely requires that plaintiffs not have 'antagonistic' interests, so 'only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status.'" Martens v. Smith Barney, 181 F.R.D. 243, 259 (S.D.N.Y. 1998) (quoting Krueger v. New York Tel. Co., 163 F.R.D. 433, 443 (S.D.N.Y. 1995)). With the named plaintiffs' claims essentially identical to those of the rest of the class, there are no antagonistic interests that go to the subject matter of the suit. See Adames v. Mitsubishi Bank, 133 F.R.D. at 91 (E.D.N.Y. 1989) (rejecting defendant's argument that " personnel at different employment levels may have antagonistic interests").

In the inquiry into class counsel, the legal representation of the class will be adequate because class counsel will prosecute this action vigorously and is experienced and competent in employment litigation, wage-and-hour class litigation, and class litigation. The accompanying resume of putative class counsel illustrates his experience and competence (Exh. F, Shen Resume). See Martens, 181 F.R.D. at 259 (finding adequacy supported by fact that lead class counsel "documented her experience in employment discrimination litigation, including class actions lawsuits"). Both plaintiffs and their counsel will represent the class adequately to satisfy the requirements of Rule 23(a)(4).

2. The Class Satisfies the Requirements of Rule 23(b)(3)

The final requirement for class certification is that one of the three types of class actions under Rule 23(b) be appropriate. Plaintiffs seek certification of the proposed class pursuant to Rule 23(b)(3). Class certification under Rule 23(b)(3) is appropriate where common questions of law or fact not only are present, but also "predominate over any questions affecting only individual members, and ... class action is superior to other available methods for the fair and efficient adjudication of the controversy." The proposed class satisfies the requirements of (b)(3) for the reasons already stated in this memorandum of law. See Rossini v. Ogilvy & Mather, Inc., 798 F.2d 590, 598 (2d Cir. 1986) (holding that satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality");

16

Martens v. Smith Barney, 181 F.R.D. 243, 260 (S.D.N.Y. 1998) (holding same as Rossini and quoting Rossini); In re TCW/DW North American Government Income Trust Securities Litigation, 941 F. Supp: 326, 342-343-(S.D.N.Y. 1996). Generally, a Rule 23(b)(3) action is appropriate whenever the actual interests of the parties may be served best by settling their differences in a single action, In re Frontier Ins. Group, Inc. Securities Litigation, 172 F.R.D. 31, 48-49 (E.D.N.Y. 1997).

The first prerequisite to bringing an action under Rule 23(b)(3) is that common questions of law or fact must predominate over the individual issues presented. Predominance evaluates and measures the cohesiveness of the class, and "will be established if 'resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.' " Worldcom, at *54.(citations omitted)

Here, the resolution of the common questions of fact and law, enumerated, supra, on pages 11-12, can be achieved through generalized proof, and these issues are more substantial for each class member's case than the issues subject only to individualized proof. Likewise, most of the overlapping and intertwined elements necessary to establish liability for the causes of action are common to the class, as in Worldcom.

The claims for violations of the New York Labor Law require establishment of the wage or benefit claimed, that the wage or benefit was earned, and the damages resulting. For the overtime claim, the second element is simply that the class member worked over 40 hours per week. Thus, for the state law claims for overtime pay, class members must prove the compensatory terms of employment, the wage rates, set out in common question 1[3]; whether Defendants failed to properly maintain records of the hours worked by the class members, and what proof of the hours is sufficient where records are not maintained, common questions 3 and 4. For the overtime pay claim, class members must, in addition, establish whether Defendants failed and/or refused to pay to class members the correct pay for hours

---

[3]Common question # refers to the common questions of fact or law stated supra, at pages 10-11.

worked in excess of forty per work week within the meaning of the New York Labor Law; commo question 2. For the spread-of-hours pay claim, class members must establish whether Defendants failed and/or refused to pay to class members the correct pay for hours worked in excess of ten hours per work week within the meaning of the New York Labor Law; common question 5. For the illegal deduction claim, class members must, in addition, establish whether Defendants made improper deductions from the pay checks of class members money for alleged damage done to customers' cars, common question # 6.

A common inquiry is the most efficient and appropriate way to answer these common legal and factual questions regarding the deliberate and systematic common course which Defendants engaged in to avoid paying full and proper compensation to its garage attendants. This court will undertake a legal and factual analysis of the common questions listed above to determine whether the plaintiffs were denied full compensation for their work.

The second criterion delineated in Rule 23(b)(3) is that the court find the class action to be superior to other available methods for the fair and efficient adjudication of the controversy. This analysis is closely related to that employed by the court pursuant to Rule-23(a)(1) which requires a determination that the class is so numerous that joinder of its members is impractical. The large number of potential class members makes joinder impractical. Moreover, the judicial inefficiency of litigating hundreds of lawsuits individually demonstrates the merits of utilizing the class action device in this action.

Since the factors outlined in Rule 23(b)(3) are interdependent and overlapping both among themselves and with the prerequisites to a class action prescribed in Rule 23(a), a number of these factors are dealt with above and therefore will not be reiterated herein. The fact that damages will vary for each class member does not require that the class action be terminated as being beyond the scope of Rule 23(b)(3). 7A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1778 (1998).

18

## IV.    **CONCLUSION**

For the foregoing reasons, plaintiffs respectfully request that this Court grant plaintiffs' Motion in all respects.

Dated: New York, New York
        November 5, 2007

MICHAEL SHEN & ASSOCIATES, P.C.

By:    _____

MICHAEL SHEN
Attorney for Plaintiffs
225 Broadway, Suite 2515
New York, New York

19